RogeLIA Caballero, Plaintiff and Appellant, *v.*
EduarDO González, Defendant and Appellee.

No. 7358. Argued June 21, 1938.—Decided July 13, 1938.

514

*A. Casanova Prats* and *J. J. Fuertes* for appellant. Appellee did not appear.

Mr. Justice De Jesús delivered the opinion of the court.

Rogelia Caballero on September 22, 1936, brought, in the District Court of San Juan, a suit for divorce against her husband Eduardo González. The plaintiff alleged that she had resided in Puerto Rico for more than a year previous to the filing of the complaint. The defendant did not appear although he was notified on October 3, 1936, and on November 17 following, the plaintiff filed a motion to note his default, which was done on November 27 following.

The trial was held on January 15, 1937. As the plaintiff was in the United States on that date, her deposition which had been taken in accordance with the law by Mr. Anthony Cardona, Commissioner of Deeds of Puerto Rico in New York, was read. It was alleged in the complaint that on the date of the filing thereof the plaintiff had been residing in Puerto Rico for more than a year, and in support of this allegation the following testimony appears in the plaintiff's deposition:

"Q. On what date was the suit for divorce on the ground of desertion brought?

"A. On September 22, 1936.

"Q. When the suit for divorce for desertion was brought did you reside in Puerto Rico? Where?

"A. Yes, I resided in Río Piedras, but during the last two weeks before I left for this city, I resided in the ward of Santurce of the city of San Juan, P. R.

"Q. How long before the filing of the suit for divorce for desertion had you lived in the Island of Puerto Rico, and in what place?

"A. I resided in Río Piedras, except during the last two weeks before my departure when I lived in Santurce, about fourteen months

before the filing of the complaint, that is, from July, 1935, to October, 1936.''

Further on, in the course of the deposition, the witness again testified in the following manner:

''Q. You have stated that after having been deserted by your husband in August, 1934, you stayed in the city of New York for eight or nine months more, and that it was during this time that you took steps to have your husband return to your home, and you have also stated that you had lived in Puerto Rico about four months when you brought the suit for divorce for desertion in this case?

''A. Yes, and I resided in Puerto Rico from July 1, 1935, to October, 1936.

''Q. On what date did you sail from New York and on what date did you arrive in Puerto Rico?

''A. I sailed from New York in the middle of the month of July, 1935, and I arrived in Puerto Rico toward the end of the same month of July, 1935.

''Q. State the reasons you had for sailing again from Puerto Rico to New York and the date on which you sailed for the said city.

''A. I had intended to stay in Puerto Rico because conditions were bad in the United States and it was difficult to obtain work, but I received a letter from my brother telling me that he had found work for me, and I sailed immediately for the city of New York where my brother is, sailing for that city at the end of October, 1936.

'' . . . . .

''Q. State on what ship and when you sailed from Puerto Rico the last time.

''A. I sailed in a freight boat of the Bull Insular Line on October 31, 1936, but I do not remember the name of the ship.''

The above-quoted matter is all that appears in the deposition of the plaintiff with respect to her residence in Puerto Rico prior to the filing of the complaint. Although in one of the questions the Commissioner of Deeds makes it appear that the witness had previously said that she had been living in Puerto Rico for four months when the complaint was filed, that statement is erroneous, since we have examined the entire deposition and such a thing is not stated anywhere in it.

516

The deposition of the plaintiff on this point was corroborated by the witness Ismencia Solís, who testified at the trial.

The uncontradicted evidence of the plaintiff also shows that the defendant deserted her in July or August of 1934, and inasmuch as the complaint was filed on September 22, 1936, more than a year had elapsed since the defendant had deserted the plaintiff. In spite of this evidence which was in no way contradicted, the lower court dismissed the complaint and based its decision as follows:

"The court is not convinced, because there is not sufficient evidence of it, that the plaintiff actually resided in Puerto Rico during the time required by subdivision 2 of section 97 of the Civil Code. The court rather believes that the plaintiff made a quick trip to Puerto Rico to file her complaint and then return to New York. There is not a single pleading signed by her. Her deposition does not convince us, because it is not explicit as to the date of her arrival in Puerto Rico and still less as to her departure from the island."

The plaintiff appealed and, in accordance with Rule 4 of this court, the case was referred to the prosecuting attorney (*Fiscal*) of this court in order that he might present the corresponding report within the term of ten days. In his report the prosecuting attorney stated the following:

"The only question to decide is whether or not the lower court had before it sufficient evidence to show that the plaintiff resided in the Island for one year immediately preceding the filing of the complaint.

"We sincerely believe that the deposition of the plaintiff is clear on this point, and her testimony has not been contradicted in any way; and we can say the same of the testimony of Ismencia Solís.

"The lower court based its belief that the plaintiff did not reside throughout the jurisdictional year in Puerto Rico and that on the contrary she made a quick trip to Puerto Rico in order to file her complaint and then return to New York, on the following grounds:

"1. In that not a single pleading is signed by her;

"2. In that her deposition is not explicit as to the date of her arrival in Puerto Rico and still less as to her departure. (Rec., p. 3)

"As to the first ground, the only essential pleading of the plaintiff in this case is the complaint, and it is signed by her attorney, and no law exists in Puerto Rico which requires the plaintiff to personally sign the said complaint. It is sufficient for the attorney to sign it.

"As to the second ground, we believe that the deposition of the plaintiff is sufficiently explicit to establish the fact that she arrived in Puerto Rico at the end of July, 1935, and remained in the island until October, 1936, which statement was corroborated by the testimony of Ismencia Solís.

"It is not a question, therefore, of weighing conflicting evidence, in which case the judge who presides at the hearing has ample discretion to decide according to his judgment, which will be supported on appeal unless passion, prejudice or bias, or manifest error is shown. Here there is no conflict whatever in the evidence. In the face of the clear and definite statements of both witnesses, as to the time during which the plaintiff resided in Puerto Rico previous to the filing of the complaint, that is, from the end of July, 1935, to October, 1936, there is no other testimony to the contrary or any other ground which could destroy the evidence of the plaintiff on any point in her testimony."

In the case of *Quock* v. *U. S.*, 140 U.S. 417, 35 L. Ed. 501, Mr. Justice Field, referring to the credit to be accorded a witness whose testimony has not been contradicted in any manner, said:

"Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by any one, should control the decision of the court; but that rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony; and there may be so many omissions in his account of particular transactions, or of his own conduct, as to discredit his whole story. His manner, too, of testifying may give rise to doubts of his sincerity, and create the impression that he is giving a wrong coloring to material facts. All these things may properly be considered in determining the weight which should be given to his statements, although there be no adverse verbal testimony adduced."

In our own decisions we have a case which illustrates the question perfectly. It is the case of *Velázquez* v. *Heirs of Blanco,* 50 P.R.R. 282. In that case the trial judge, who was the writer of this opinion, in dismissing the complaint said:

"The plaintiff attempted to show how he had acquired these promissory notes, but his testimony is so improbable, so contradictory, and his manner of testifying so deficient, that we are absolutely sure that the plaintiff, in spite of the fact that he is the holder of the obligations, is not the owner.

"It is sufficient to read his testimony to become immediately aware of the improbability of the story he tells in relation to the manner in which he acquired these documents.

"It appears from the evidence that Juan B. Blanco lived in concubinage with a woman with whom his children had no relations whatever, and it was at the time of his death that he called his son Juan, who could not or did not take charge of the documents of his father which were in the custody or care of the concubine who accompanied him.

"We are convinced, as we have said before, that the plaintiff is not the owner of these promissory notes, and our conscience balks at judgment for the plaintiff in this case, in spite of the fact that the documents are in his possession."

The appellant in that case attributed to the court, among others, the error of dismissing the complaint on the strength of scruples of conscience and not on the merits of the pleadings and the evidence, thus disregarding the rights of the plaintiff as the bearer and owner of the two promissory notes negotiated in good faith, for value received, before maturity.

In discussing the assignment of error mentioned above, this court speaking through Mr. Justice Travieso said:

"The decision of the first error assigned offers no difficulty whatever. The paragraphs of the opinion of the lower court which we have copied clearly show that the judgment is not based on mere conscientious scruples of the trial judge, but on a careful weighing and appraisal of the testimony of the plaintiff himself in support of his right to collect the promissory notes. The judge who presided at the trial and before whom the plaintiff testified, had the opportunity, which this court can not have, of seeing the plaintiff in per-

son, of observing his manner of testifying, of hearing and seeing the contradictions fall from his lips and of gradually forming in his conscience the conviction that the plaintiff did not have the right to the judgment which he requested. A judge, who after hearing the story which a plaintiff tells him, believes it improbable; who observes the attitude and the manner in which such plaintiff testifies and finds it deficient; and who notes the numerous and inexplicable contradictions made in his testimony, would indeed have to do violence to his conscience in order to render a judgment for such a plaintiff.

"It is to the trial judge that the law grants the power to weigh the evidence and to judge the credibility of the witnesses. And the appellate court cannot and should not reverse a decision for supposed errors in the weighing of the evidence, unless it is alleged and shown, or unless it is evident from the record, that the judge acted with partiality, prejudice, or bias or that he committed manifest error. And in this case none of these grounds for reversal has been alleged.

"The summary of the evidence which appears in the statement of the case does not give rise to the conviction that the lower court erred in weighing it. Rather does it bring out the improbability of the story the plaintiff tells to maintain that he is not only the holder but also the owner of the promissory notes. It is difficult to believe that a man who has failed in business, should begin shortly afterwards to make loans to another person, for a period of two or three years, without obtaining receipts from the borrower for the amounts loaned; that these loans should be made to a person who already owes the lender a considerable sum for commissions on sales; and lastly, that the debtor of those loans and commissions, totalling $5,300, without pressure from his friend for payment, should have delivered to his creditor two mortgage notes for a total value of $14,800 at maturity, a few days before the due date of those obligations. We are not surprised that the conscience of the trial judge balked at believing the testimony of the plaintiff and of his alleged assignor Gregorio Cubero."

In the instant case, the judge of the lower court had no ground whatever for doubting the testimony of the plaintiff. He did not see her or hear her testify since, as we have seen, she testified by deposition. Her testimony is perfectly compatible with the truth and her answers are clear, categorical,

precise, and free from evasion. The belief of the court that the plaintiff made a quick trip to Puerto Rico in order to file the complaint and then return to New York is a mere conjecture, not justified by the evidence. Nor can the credibility of the plaintiff be affected by the fact that she did not verify the complaint. Her attorney swore to it and that was sufficient.

For the reasons stated we are forced to conclude that the lower court committed manifest error in discarding the deposition of the plaintiff and the testimony of the witness Ismencia Solís. Giving their testimony the credit which must be given to it according to law, in this case the judgment appealed from must be reversed, and another rendered instead in favor of the plaintiff, decreeing that the marital ties be dissolved on the ground of desertion of the wife by the husband, granting to the wife *patria potestas* over her two daughters Olga and Carmen González Caballero, twelve and nine years of age, respectively, but without any provision regulating family relations, since the parties reside outside of Puerto Rico, and imposing costs in the lower court, excluding, of course, attorney's fees, on the plaintiff.